*Mem.* — WESTON C. J. was not present at the hearing of any causes during this Term, being employed in jury trials in the County of Washington.

## JOSEPH OTIS *versus* MOODY P. MOULTON.

When in a deed two monuments are described, and the length of the line between them is given, but one of the monuments cannot be found, the location of the lost monument is to be ascertained by measuring the given length of line from the known monument, and not by a reference to and conformity with the length of other corresponding lines on the same tract on which the monuments have been preserved.

Where a grant is made and bounded by monuments named as existing upon the earth and by distances between them, and not by monuments and distances named as on the plan only, the admeasurement should be made upon the earth, and not by the scale upon the plan.

The proprietors of a township surveyed through mistake a portion of land without the limits of their grant, and conveyed the same, describing it as within their limits.—The grantee entering and occupying such premises with a claim of ownership and adversely to all others, will acquire a title by disseizin by lapse of time.

The rule that occupation by mistake does not give right, may in such a case be applied to the grantors, but is not applicable as against the grantees, who are not expected to be familiar with rights of the grantors, and who must be considered as intending to claim what they have purchased.

THIS was a writ of entry, for a tract of land in Bucksport, on the demandant's count on his own seizin and a disseizin by the tenant. Plea, nul disseizin. The defendant likewise set up a claim for betterments.

The plaintiff, at the trial before EMERY J. to prove title, read a deed from the Commonwealth of Massachusetts to Leonard Jarvis, dated Feb. 16, 1794, conveying "all the unappropriated land lying between the Penobscot river and the Lottery townships in the county of Hancock, Nos. 7 and 8, surveyed by John Peters in 1786 ; also the gore of land lying north of said township No. 8 ;" also a deed from said Jarvis to the Union Bank, dated Dec. 26, 1800, of seven eighths of the land in No. 8 ; also a deed from the Union Bank to Sarah Russell, dated Nov. 10, 1816, of the same premises, and from Sarah Russell to Joseph Otis, dated Nov. 21, 1816, all which deeds were duly acknowledged and recorded.

To show what lands had been appropriated before the grant to Jarvis, he introduced the grant from the Province of Massachusetts Bay to James Duncan and others of six townships, each township being conveyed by a separate description, and being numbered from one to six inclusive, and being townships afterwards known as follows :— (No. 1) Bucksport ; (No. 2) Orland ; (No. 3) Penobscot ; (No. 4) Sedgwick ; (No. 5) Bluehill ; (No. 6) Surry. The description of Bucksport will be found in the opinion of the Court.

The plaintiff also introduced the deed of the Commonwealth of Massachusetts to Moses Knapp and his associates, dated June 29, 1785, duly acknowledged and recorded, conveying a tract, which is now Orrington and Brewer.

The defendants introduced a deed from Jonathan H. Brown, who was admitted to be the proprietor of Bucksport, conveying the premises to Samuel Bartlett, from whom, through divers mesne conveyances, the land passed to the tenant.

The facts in the case sufficiently appear in the opinion of the Court.

*F. Allen* and *W. Abbott,* for the tenants, cited *Kennebec Purchase* v. *Laboree,* 2 Greenl. 275 ; *Little* v. *Libbey,* 2 Greenl. 242 ; *Ken. Pur.* v. *Springer,* 4 Mass. R. 416 ; *Prescott* v. *Nevers,* 4 Mason, 326 ; *Jackson* v. *Elston,* 12 Johns. 454 ; *Small* v. *Procter,* 15 Mass. R. 495 ; *Poignard* v. *Smith,* 6 Pick. 172 ; *Pidge* v. *Tyler,* 4 Mass. R. 541 ; *Higbee* v.

*Rice,* 5 Mass. R. 344; *Ibid.* 353; *Bryant* v. *Com. Ins. Co.*
13 Pick. 543; *Coffin* v. *Phœnix Ins. Co.* 15 Pick. 295; *Owen*
v. *Bartholomew,* 9 Pick. 520.

*J. A. Poor,* for the demandant, referred to *Heaton* v.
*Hodges,* 14 Maine R. 66; *Loring* v. *Norton,* 8 Greenl. 61;
*Thomas* v. *Patten,* 13 Maine R. 329; *Call* v. *Barker,* 3
Fairf. 326; *Cutts* v. *King,* 5 Greenl. 482; *Ricard* v. *Williams,*
7 Wheat. 59; *Brown* v. *Gay,* 3 Greenl. 126; *Ross* v. *Gould,*
5 Greenl. 211; *Small* v. *Procter,* 15 Mass. R. 499; *Doe* v.
*Thompson,* 5 Cow. 371; *Doe* v. *Hull,* 16 E. C. L. R. 71.

The opinion of the Court was by

SHEPLEY J. — On the report and motion for a new trial
two questions are presented for consideration. One arises out
of the testimony relating to the boundaries of the town of
Bucksport; and the other out of that relating to the occupation
and title of the tenant. The bounds of the first of the six
townships now Bucksport are described as beginning on the east
side of the Penobscot river, "at a hemlock tree marked and
running into the land in a course N. 70 deg. E. 5 miles and
184 rods to a stone monument, and from thence along a line
(which forms the boundary of the first and second of the said
townships to the north east and runs on a course S. 26 deg.
E. nine miles and forty poles in the whole) unto a stone
monument set up thereon, which marks the east corner of the
said first township; and from thence by a line S. 53 deg. W.
5 miles 232 poles to a monument on the northwest side of the
east branch of Penobscot river, and down the said branch one
mile and fifty-six poles unto another monument on said branch,
and from thence S. 56 deg. W. one mile and one hundred and
thirty-two poles to a monument on the east side of the river
Penobscot," and from thence along the river to the first bound.
The place of starting from the Penobscot river at the first
bound is not disputed. And the course of the line, making
allowance for the variation, is found to be correct, and it is not
disputed. The stone monument named as the second bound

is not found ; and there is no proof of the original survey of the line upon the earth between these two monuments, by which its length can be ascertained. The length therefore should be ascertained by admeasurement upon the earth. It is contended, however, that in measuring it, the proprietors should not be limited to the exact measure named, but should be allowed a larger measure, corresponding to the measure found on other parts of the lands, compared with that stated on the plan. When the grant is made and bounded by monuments named as existing upon the earth, and by distances between them, and not by monuments and distances named as on the plan only, the rule has been too well established to be now disturbed, that the admeasurement should be made upon the earth, and not by the scale upon the plan. And this case illustrates the propriety and necessity of the rule ; for although it has been stated by a witness, that in ten different admeasurements there was a larger measure in each case upon the earth, than that stated on the plan, yet there was no uniformity in the excess. And this very line, if measured by the scale upon the plan, would fall short of the distance stated in the grant and now allowed as measured on the earth.

In the case of *Loring* v. *Norton*, 8 Greenl. 61 the conveyance was of certain lots according to a plan. No monuments were named in it. And the decision was on such a state of facts, that the length of the lines was to be ascertained by applying the scale, by which the plan was protracted. The instruction in this case, that in the absence of proof of an original survey, and of the monuments named in the grant, the length of the lines " is to be settled by the length of line given on the plan, according to its scale exactly measured," was not correct, when applied to the state of facts in the case. It becomes however, unimportant, for on other instructions, the jury found the length of the line, according to the statement of it in the grant, as admeasured on the earth. There is strong corroborrative proof, that the birch stump stands at the true northeast corner of the first township. It is found standing in the southerly line of the grant to Knapp and associates, made in

the year 1785. And in the year 1833, that line was found to be forty-seven years old, which leaves little, if any doubt, that it was made at the time of the original survey. And if the line of the first township, were extended on its course one hundred and eighty-four rods further to the beech tree, the whole of that distance must be run upon the land granted to Knapp and associates. Another proof of it, is derived from an examination of the testimony relating to the south-easterly line of the township. The whole length of that line, as stated in the grant, is eight miles and one hundred rods. And beginning on the Penobscot river and measuring it back to the line running from the birch stump to the Surry corner, it is found to be on the earth eight miles and one hundred and twenty-three rods; and it must be extended nearly two hundred rods further to strike the line asserted by the proprietors to be the easterly line of the township. Another proof will appear from an examination of the testimony relating to the great divisional line, which is stated in the grant to run from Cape Rosiere seventeen miles and sixteen poles on a course S. 37 deg. W. The point of commencement at the Cape is not disputed; the course and location of it are found to correspond to the plan of the six townships; and measuring from the Cape to the Surry corner, being also the corner of the townships numbered two and seven, the length was ascertained by the survey of 1832, to be seventeen miles and two hundred and eighty-six rods. And this line must be extended more than two hundred rods further to meet the nearest line extending from the beech tree southeasterly in a direction to meet it; while the testimony shows, that the Surry corner has never been disputed, and that the lands have been surveyed into lots in the townships to the lines running to that corner; and it cannot therefore, upon this testimony, be considered as liable to be moved easterly a distance of two hundred rods. Moreover, the line from the northeast corner of the first to the southeast corner of the second township, is a straight line; and if those two corners were extended farther easterly, one must be extended the whole distance into Orrington and the other into Ellsworth.

And the lines of those townships appear to have been too long and too well established to admit of it. It is not however to be denied, that there are difficulties to be encountered in coming to the conclusions which have been stated. One is, that so early as the year 1801, the easterly line of the first township appears to have been surveyed and marked from the beech tree on a course S. 20½ deg. E. and the land adjoining it to have been surveyed into lots. It was not however extended by the easterly end of the second township; and there were two lines; and each was asserted to be the easterly line of that township, and neither would coincide with the line so run at the easterly end of the first township. And this line, although existing for so long a time, cannot be and is not pretended to be a line of the original survey, or to have had any other foundation than the one before stated. Another difficulty is, that the line in the grant, which makes the easterly line of the first and second townships, is stated to be nine miles and forty poles in length, and to be on a course S. 26 deg. E., and both of these statements must be disregarded. That line, as measured on the earth, where the demandant asserts that it should be, is found to be but about thirty rods short of twelve miles in length. It would be somewhat shorter if run as the proprietors assert that it should be, but it would not then conform at all to the length stated in the grant. And the grant requires, that it should extend to the great divisional line, which it could not do, if the length as stated in the grant were not disregarded. And it cannot be run on the course stated in the grant, commencing at the beech tree to meet the Surry corner, where there is a possibility of locating it, for it would have to be found in Branch pond. There can be therefore no conformity to that line, either as to course or distance, whether it be run from the birch stump or the beech tree. There must have been a mistake in stating the course and distance of that line in the grant. Another difficulty arises from finding that the great divisional line appears to have been run easterly two hundred and forty-two rods beyond the Surry corner, and towards Branch pond. It does not however terminate there at

any monument marked as a corner; and there do not appear to be any lines extending either northerly or southerly from it, as there should be if the corner was originally designed to have been placed there. And this running may be accounted for in the manner stated by a witness, that surveyors sometimes run their lines beyond the points, where they are intended to be intersected by lines from other places running on a different course. But these and some other difficulties not noticed, are not sufficient to counterbalance the greater and more insuperable difficulties, which must be encountered by attempting to establish the easterly line of the first township, where the proprietors assert that it should be run. There is therefore no cause for disturbing the verdict on account of the finding of the jury in relation to this line. Upon the same testimony, a jury ought not to be expected to find differently.

In relation to the occupation and title under which the tenant claims, it appears, that Rufus Moulton entered upon the premises under a deed recorded, and built a house thereon in the year, 1810 ; and continued to live upon and occupy the premises, until he died in the year 1833. He had built a framed house and two barns, and so had improved the farm by clearing and cultivation, that it had become much more valuable. It is true that he had conveyed it to another person in 1812, but one of his family re-purchased it in 1815. And during all the time he was not disturbed in his occupation of it. And there is proof, that he claimed to do so by right, and the legal presumption is, that he occupied under the title, which by conveyances had been derived from him ; and his occupation and possession would become theirs. The farm had been thus occupied more than twenty years under a recorded title before an entry was made by the demandant. And the character of that occupation was such as to leave no doubt that it was under an assertion of title. The deeds of conveyance, it is true, described the land as situated in the town of Bucksport and the proprietors of the township, and their representatives might be supposed to intend to keep within their own limits, and if they did not, the rule might justly be applied to them, while pro-

fessing to do so, that mistake does not give right.   But the grantee should not be expected to be familiar with the rights of the proprietors and the bounds of their township ;  and cannot be supposed not to intend to claim the lands which he had purchased.   Nor to intend to notice  or keep within any other bounds, than those named in his deed.   Much less can he be supposed to intend to admit the title to his farm to be bad, because upon a more accurate settlement of town lines it should be found to be within the bounds of another township.   And more especially should no such intention be inferred in this case, when it is considered that the easterly line of the town of Bucksport had been run and marked before he purchased so as to include his land.   That being the only marked line may well be supposed to have been regarded by him as the true line.   And his right under such circumstances cannot be affected by a correction of this error and a settlement of the line upon more correct principles.   The case presents all the elements necessary to constitute a disseizin.   The occupation was open, notorious,  exclusive, adverse, and under a recorded title with a claim of ownership according to that title.   And this was continued for more than twenty years before the entry, and the title of the tenant must therefore upon this testimony be regarded as having become perfect under the statute.   The demandant will find another apparently insuperable difficulty. These premises, while thus occupied, could not be conveyed by the deeds from the Union Bank to Sarah Russel and from her to him.   They were at that time disseized.   It is not perceived that this action upon the present testimony can be maintained.

*The verdict is set aside and a new tial granted.*